**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                                    )
MILLENNIUM SQUARE RESIDENTIAL )
ASSOCIATION,                                            )
                                                                    )
                    Plaintiff,                             )
                                                                    )
          v.                                                      )          Civil Action No. 11-1632 (BJR)
                                                                    )
2200 M STREET LLC,                              )
et al.,                                                           )
                                                                    )
                    Defendants.                        )
_____ )

## I.    INTRODUCTION

Plaintiff Millennium Square Residential Association ("MSRA") filed this action over

problems with the maintenance and repair of the Millennium Square Condominium's parking

garage.  The Complaint sets forth claims against 2200 M Street LLC, the developer of the

condominium; Millennium Washington Commercial Trust ("Millennium Trust"), Millennium

CAF II ("Millennium CAF") (collectively the "Millennium Defendants"), the Millennium

Square Commercial Association ("MSCA"), and seven individuals who are either on the

condominium's Board of Directors or the Board's Executive Committee ("Individual

Defendants").  All of the defendants have brought motions seeking to dismiss the claims brought

against them.  The plaintiff, MSRA,  moves to dismiss the defendants' counterclaims.  Having

reviewed the parties' briefs, arguments, relevant case law and the entire record, the court grants

the motions to dismiss brought by Millennium Trust and MSCA and denies the motions brought

by the other defendants.  The court grants the plaintiff's motion to dismiss the counterclaim

count of unjust enrichment, and denies the remainder of the plaintiff's motion to dismiss the

Millennium Defendants' counterclaims.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Millennium Square Condominium is a mixed-use condominium containing 161 residential units, four commercial units, a Ritz-Carlton hotel, a fitness facility, a retail unit, and a parking facility ("Parking Unit"), located in Washington D.C.[1]  The Parking Unit provides parking for both commercial unit owners and residential unit owners.  The Millennium Square Condominium was created under the District of Columbia's Condominium Act when the Condominium's Declaration, Bylaws and Plat ("governing documents") were recorded.  Compl. ¶¶ 2-4.  The governing documents created MSRA, a residents' association for residents of Millennium Square Condominium.  The MSRA is governed by the Residential Executive Committee.  Id. ¶¶ 2-3, 8.  Each owner of a residential unit is a member of the MSRA and each owner enters into a 98-year lease for the exclusive use of at least one parking space located within the Parking Unit.  Section 1 of the parking leases states that the residential unit owners are obligated to pay the Millennium Defendants fees to cover part of the Millennium Defendants' operating expenses, including maintenance, for the Parking Unit.[2]  According to the Complaint, the defendants have represented that Millennium Trust owns the Parking Unit through a trustee named Millennium CAF II, LLC, for the benefit of and at the direction of 2200 M Street LLC, and that 2200 M Street LLC designed and developed Millennium Square.  Id. ¶¶ 4, 6-10, 45.  The Complaint alleges that Millennium Trust is a real estate investment trust.  Id. ¶ 9.  The owners of the commercial units are members of the MSCA, which is governed by a Commercial Executive Committee.  The Complaint defines the MSCA as an "unincorporated association"

---

[1] The Complaint alleges that the parking facility itself is a commercial unit.  Compl. § 42.

[2] According to the Complaint, between 2001 and August 2011, the Millennium Defendants charged, and MSRA has paid, $1,842,934.08 for the alleged operating expenses of the Parking Unit.  Compl. ¶¶ 46-47.

that was created under the District of Columbia Condominium Act.  Id. ¶ 2, 19.  All of the

Individual Defendants except Craig Mooney are members of the Board of Directors of the

Condominium Unit Owners Association,[3] and all of the Individual Defendants are members of

the Commercial Executive Committee.  Id. ¶¶ 6, 11-18.

### A.     The Complaint

According to the Complaint, Section 3.4 of the Condominium Declaration states that "the

Bylaws shall govern the division of maintenance and repair responsibilities between the Unit

Owners, the Unit Owners Association, the Residential Association and the Commercial

Association."  Compl. ¶ 41.  Section 15(b)(1) of the Condominium's Bylaws states that "each

Commercial Unit Owner shall keep the Commercial Unit and its equipment, appliances and

appurtenances in good order, condition and repair and in a clean and sanitary condition."

Section 13.1(c) of the Bylaws states that "the Commercial Executive Committee shall, on behalf

of the Commercial Association . . . [p]rovide for the operation, care, upkeep and maintenance of

the Commercial Sections, additions, alterations, renovations or improvements to the Commercial

Section[.]  Id. ¶ 42, 50.  Section 18.1 of the Bylaws states that the "Bylaws may not be modified

or amended except as provided in . . . the Condominium Act[,]" which MSRA alleges requires

amendments to condominium instruments to be in writing.  Pl.'s Stmt. of P. & A. in Supp. of

Mot. to Dismiss the Counterclaims ("Pl.'s Mem.") Ex. A.

The Complaint states that the Parking Unit has "numerous structural problems" that have

deleteriously affected the residents' ability to use their parking spaces and created safety hazards

such as conditions that cause residents to slip and fall, conditions that cause vehicles parked

---

[3] According to the Complaint, the Condominium Unit Owners Association administers and
manages the Condominium, and is responsible for the maintenance, repair and replacement of
common elements of the Condominium.  Compl. ¶ 5.

inside the Parking Unit to corrode, and conditions that cause mold to accumulate.  The failure of the defendants to fix the Parking Unit has allegedly deleteriously affected the marketability and value of the residential units.  The Complaint alleges that the structural problems would cost at least $600,000 to fix.  Co mpl. ¶¶ 29-30, 39.  MSRA has asked the defendants to fix the structural problems with the Parking Unit, but the defendants have not done so.  MSRA asserts that 2200 M Street LLC knew or should have known about the structural defects in the Parking Unit, but did not inform prospective purchasers of them.  Id. ¶ 35.

The nine-count Complaint seeks repair of the Parking Unit.  The Complaint alleges one count of negligence against all defendants (Count Six) and one count of breach of contract against all defendants for breaching the condominium governing documents (Count Eight); counts of breach of contract, breach of express warranty, and breach of implied warranty against the Millennium Defendants and MSCA seeking specific performance (Counts One through Four); one count of strict liability against the Millennium Defendants (Count Five), one count alleging a violation of the D.C. Consumer Protection Act against the Millennium Defendants (Count Seven); and one count of breach of fiduciary duty against the seven Individual Defendants (Count Nine).  2200 M Street LLC and Millennium Caf II filed a three-count counterclaim against the plaintiff, alleging that MSRA breached the operating agreement and the parking lease (Counts One and Two), and one count of unjust enrichment (Count Three).

### B.    Pending Motions

The defendants have filed dispositive motions.  The Individual Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts Six, Eight, and Nine, arguing that the Complaint fails to state plausible claims of individual liability.  The Millennium Defendants have moved under Rule 12(b)(6) to dismiss Counts Five and Six as barred by the

economic loss doctrine.  Millennium Washington Commercial Trust and MSCA have also

moved under Rule 12(b)(6) to dismiss, arguing that they cannot be sued, and that the Complaint

fails to state plausible causes of action against them.  MSRA has moved to dismiss the

counterclaims.

## III.    ANALYSIS

### A.    LEGAL STANDARD FOR A MOTION TO DISMISS

"'A complaint can be dismissed under Rule 12(b)(6) when a plaintiff fails to state a claim

upon which relief can be granted.'"  *Howard Univ. v. Watkins*, Civil Action No. 07-492 (RWR),

2012 WL 1454487, at *2 (D.D.C. April 27, 2012) (quoting *Peavey v. Holder*, 657 F. Supp. 2d

180, 185 (D.D.C. 2009) (citing Fed. R. Civ. P. 12(b)(6))).  Motions to dismiss under Rule

12(b)(6) test the legal sufficiency of a complaint.  *Smith-Thompson v. Dist. of Columbia*, 657 F.

Supp. 2d 123, 129 (D.D.C. 2009).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter,
> acceptable as true, to "state a claim to relief that is plausible on its face." . . .  A
> claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 556, 570 (2007)).  "The complaint must be construed in the light most favorable to the

plaintiff and 'the court must assume the truth of all well-pleaded allegations.'"  *Watkins*, 2012

WL 1454487, at *2 (quoting *Warren v. Dist. of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations[.]"  *Twombly*, 550 U.S. at 555.  However, "[w]here a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 557.

When assessing a motion brought under Rule 12(b)(6), a court avoids consideration of matters outside the pleadings, but may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), public records, and "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]" *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)); *Hartline v. Sheet Metal Workers' Nat'l Pension Fund*, 134 F. Supp. 2d 1, 8 (D.D.C. 2000).

### B.     MOTION BY MILLENNIUM TRUST TO DISMISS

Millennium Trust moves to dismiss the claims against it, arguing that as a trust, it is not a legal entity that can sue or be sued in the District of Columbia. Millennium Trust's Stmt. of Law in Supp. of Mot. to Dismiss ("Millennium Trust's Mem.") at 6. MSRA disagrees, and argues without citing any support in either case law or statute, that under District of Columbia law, Real Estate Investment Trusts ("REIT") have the capacity to sue and be sued, and that the Complaint alleges that Millennium Trust is a REIT. Pl.'s Stmt. of P. & A. in Opp'n to Millennium Trust's Mot. to Dismiss ("Pl.'s Opp'n to Millennium Trust") at 2-3**.**   Millennium Trust points out in its reply that it denied in its answer that it was a REIT, and argues that its Declaration of Trust, attached to the reply, demonstrates that Millennium Trust is not a REIT because there are not 100 or more persons who hold a beneficial ownership in it. Millennium Trust's Reply, at 3-4. As required when deciding a motion to dismiss under Rule 12(b)(6), this court will assume, without deciding, that Millennium Trust is a REIT. However, that does not resolve the inquiry. For entities that are not incorporated, the capacity to sue or be sued is determined by the law of

the District where the court is located, here the law of the District of Columbia.  Fed. R. Civ. P.

17(b)(3).  As indicated above, the parties offer no authorities as to whether trusts, organized in

the manner that Millennium Trust is organized, have the capacity to be sued in the District of

Columbia.[4]

In general, "the common law of the District of Columbia is that an unincorporated

association may not be sued in its own name."  *Plan Committee v. Pricewaterhousecoopers,*

*LLP*, Civil Action No. 02-1487 (TFH), 2007 WL 1191917, at *3-4 (D.D.C. April 20, 2007)

(citing *Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 22 n. 19

(D.D.C.2004) (stating that "D.C. law is even less obliging" than Maryland law to unincorporated

entities attempting to sue); *Pritchett v. Stillwell*, 604 A.2d 886, 889 (D.C. 1992)(stating that "the

common law of this jurisdiction is that neither a partnership nor an unincorporated association

may be sued in its own name").  In addition, the general rule is that "[a] trust is not an entity

distinct from its trustees and capable of legal action on its own behalf, but merely a fiduciary

relationship with respect to property."  76 Am Jur 2d Trusts § 3 (2005); *see also Corcoran v.*

*Rockwell*, 410 A.2d 202, 204 (D.C. 1979) (citing Am. Jur. 2d Trusts while interpreting District of

Columbia law regarding trusts).  MSRA has not shown that the Millennium Trust is anything

other than an unincorporated association that lacks the capacity to be sued.  MSRA cites the

opinions in *Nat'l Cmty. Reinvestment Coalition v. Accredited Home Lenders Holding Co.*, 573 F.

Supp. 2d 70 (D.D.C. 2008) and *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008), as

support for the argument that organizations like the Millennium Trust have the capacity to be

sued.  However, neither case analyzed whether REITs were proper parties under District of

Columbia law, and MSRA has not shown that the entities involved in those cases were the same

---

[4]  The parties do not full analyze or define the corporate form of Millennium Trust, other than
apparently agreeing that it is not an incorporated entity.

type of entity as the Millennium Trust.  The REIT defendant in *Nat'l Cmty. Reinvestment Coalition* was a "wholly-owned subsidiary of Accredited, Inc.[,]" a corporation incorporated in the state of Florida, *see Nat'l Cmty. Reinvestment Coalition*, 573 F. Supp. 2d at 73, and the REIT defendant in *Lemon* was a publicly traded REIT incorporated in Maryland.  *Lemon*, 514 F.3d at 1314.  Further, while MSRA argues that this Court can keep an unincorporated entity as a party where it would be inequitable not to, MSRA has not explained why it is necessary to keep Millennium Trust in the case when the trustees and the beneficiaries of that trust remain as parties in the case.  Millennium Trust's motion will be granted.

### C.    MOTION BY MSCA TO DISMISS

MSCA moves to dismiss the claims against it, arguing that it is not a legal entity that can sue or be sued in the District of Columbia.  MSCA's Stmt. of P. &. A. in Supp. of Mot. to Dismiss ("MSCA's Mem.") at 7-8.  The parties agree that MSCA is unincorporated.  They also agree that under D.C. Code § 29-1109(a) that "[a]n unincorporated <u>nonprofit</u> association shall have the capacity to sue and be sued in its own name."  What the parties dispute is whether MSCA is a "non-profit" association.  MSRA argues that MSCA is a non-profit association because its bylaws define it as an "incorporated non-profit association," and because MSCA's bylaws state that the Commercial Executive Committee, on behalf of the MSCA, has the authority to enforce "by legal means the provisions" of the governing documents.  Pl.'s Opp'n to MSCA at 4-5.  MSCA argues in its reply that it is not an unincorporated non-profit association under District of Columbia law.  MSCA's reply at 2-6.  MSCA additionally points out that the D.C. Code expressly precludes organizations formed under a statute (in this case the District of Columbia Condominium Act) from being considered an unincorporated non-profit association.  MSCA's Reply at 2-3; D.C. Code § 29-1102(5)(c).  As an unincorporated association that,

because it was formed under the District of Columbia Condominium Act, does not meet the D.C. Code's definition for unincorporated <u>non-profit</u> associations that can sue or be sued, MSCA is not a proper party and the claims against it will be dismissed.

### D.     MOTION BY ALL DEFENDANTS TO DISMISS COUNTS 5 & 6

Count Five of the Complaint alleges a claim of strict liability against all the Millennium Defendants.  The Complaint alleges that the Millennium Defendants were an integral part of the marketing scheme that put the parking spaces in the Parking Unit into the stream of commerce, and that the spaces in the Parking Unit were leased to MSRA and the public in a defective and unreasonably dangerous condition.  Compl. ¶¶ 80-85.  Count Six of the Complaint alleges a claim of negligence against all defendants.  According to the Complaint, the defendants' negligence put the health and safety of MSRA unit owners "at risk," and damaged MSRA members' vehicles.  <u>Id.</u> ¶¶ 92-96.

The Individual Defendants[5] and the Millennium Defendants move to dismiss Counts Five and Six of the Complaint, arguing[6] that the economic loss doctrine precludes MSRA's claim for strict liability against the Millennium Defendants (Count Five), and claim of negligence against the Millennium Defendants and Individual Defendants (Count Six).  <u>See</u> Individual Defs.' Stmt. of P. & A. in Supp. of Mot. to Dismiss ("Individual Defs.' Mem.") at 18-20; Millennium Defs.' Stmt. of P. & A. in Supp. of Mot. to Dismiss ("Millennium Defs.' Mem.") at 6-7.

---

[5]   David Cvijic, David Goben, Edward Wierzel, Joe Gulitti, Amy Press, Craig Mooney, and Tim O'Brien.

[6]   In their reply brief, the Millennium Defendants also argue for the first time that MSRA lacks standing to bring suit for personal injury or property damages, and that the parking leases entered into by the unit owners bar claims for personal injury and property damage.  Because these arguments were raised for the first time in their reply brief, they will not be considered.  *See Presbyterian Med. Ctr. of the Univ. of Pa. Health Sys. v. Shalala*, 170 F.3d 1146, 1152 (D.C. Cir. 1999) (stating that a court need not consider an argument first raised in a reply brief); *D.L. v. Dist. of Columbia*, 450 F. Supp. 2d 11, 20 n.6 (D.D.C. 2006) ("Defendants should have included this argument in their motion to dismiss, rather than waiting to raise it in their Reply.").

The economic loss doctrine is a rule that prevents a party from alleging a tort claim, such as negligence or strict products liability, "'where the only damage is to the product itself.'" *Capital Motor Lines v. Detroit Diesel Corp.*, 799 F. Supp. 2d 11, 16 (D.D.C. 2011) (quoting *Liberty Mut. Ins. Co. v. Equipment Corp. of America*, 646 F. Supp. 2d 51, 56 (D.D.C. 2009) (internal citation omitted)). "Under the economic loss doctrine, a plaintiff [suing in tort] may not recover the 'loss of value or use of the product itself, cost to repair or replace the product, or the lost profits resulting from the loss or use of the product.'" *Capital Motor Lines*, 799 F. Supp. 2d at 16 (quoting *Potomac Plaza Terraces, Inc. v. QSC Products, Inc.*, 868 F. Supp. 346, 354 (D.D.C. 1994)(internal citations omitted)).

The defendants argue that the only damage alleged in the Complaint was damage to the Parking Unit itself, and that the claims in Counts Five and Six are truly contract claims shoe-horned into a tort framework, and as such should be dismissed. While defendants' arguments are well taken regarding the bulk of the damages alleged in the Complaint, the Complaint does allege damage - - corrosion to vehicles, personal injuries that occurred in the Parking Unit, and reduced marketability of the residential units - - that occurred to property that cannot be said to be part of the same "product" as the Parking Unit. *See Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, 517 A.2d 336, 338 (Md. 1986) (denying a motion to dismiss a condominium owners' association suit against a general contractor where the alleged construction default created "a threat to the safety and welfare of the owners and occupants" of the condominium). Counts Five and Six will not be dismissed as barred by the economic loss doctrine.

### E.      INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS

The Individual Defendants move to dismiss the claims alleged against them, found in

Counts Six, Eight and Nine of the Complaint.  The Individual Defendants argue that the

allegations in the Complaint fail to state a claim for negligence because the actions of the

Individual Defendants are protected under the business judgment rule and the economic loss

doctrine, and because the Complaint fails to plead essential elements of negligence (Count Six),

breach of fiduciary duty (Count Nine), or breach of contract (Count Eight) claims against the

Individual Defendants.[7]  MSRA disagrees, and argues that the economic loss doctrine and

business judgment rules are inapplicable, and that the Complaint generally pleads viable causes

of action for negligence, breach of contract, and breach of fiduciary duty. [8]

### I.  NEGLIGENCE

The Individual Defendants argue that the Complaint fails to allege the essential elements

of a claim for negligence against them.  Individual Defs.' Stmt. of P. & A. in Supp. of Mot. to

Dismiss ("Individual Defs.' Mem.") at 12-14.  According to the Individual Defendants, the

Complaint does not contain a plausible allegation that the Individual Defendants breached a duty

to MSRA.  Id.  To establish negligence under D.C. law, a plaintiff must allege "'a duty of care

owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the

interests of the plaintiff, proximately caused by the breach.'"  *Sigmund v. Starwood Urban Retail*

*VI, LLC*, 617 F.3d 512, 514 (D.C. Cir. 2010) (quoting *Dist. of Columbia v. Beretta*, 872 A.2d

633, 641 (D.C. 2005) (internal quotation omitted)).  "The existence of a legal duty being an

essential element of a negligence claim under District of Columbia law, the plaintiffs 'must

---

[7]   The Individual Defendants raise the Business Judgment Rule as a defense, but do not specify the claim it is a defense to.  A review of the relevant caselaw indicates that it is best analyzed as a defense to the claim of breach of fiduciary duty in Count Nine.

[8] The court has already ruled that the economic loss doctrine is not applicable, *supra*, pp. 9-10, and will not repeat its reasoning here.

specify a negligent act and characterize the duty whose breach might have resulted in negligence liability.'"  *Simms v. Dist. of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010) (quoting *Dist. of Columbia v. White,* 442 A.2d 159, 162 (D.C. 1982) (internal quotation omitted)).  "[T]he 'plaintiff must allege facts which show that the defendant breached some legally imposed duty owed to the plaintiff.'"  *Simms*, 699 F. Supp. 2d at 227 (quoting *White,* 442 A.2d at 162).

As mentioned above, Count Six of the Complaint alleges a claim of negligence against all defendants.  The Complaint alleges that the bylaws and the D.C. Condominium Act impose a duty on behalf of the Individual Defendants, as members of the Condominium's Board of Directors, to maintain, repair and replace common elements of the condominium such as the Parking Unit.  Compl. ¶ 5.  According to the Complaint, the bylaws imposed on each of the Individual Defendants a duty of care to design, build, construct, market, promote, sell, lease, maintain and repair the Parking Unit, and the defendants breached that duty by designing and constructing a defective Parking Unit, by failing to maintain it, and by failing to notify the MSRA of its defects in a timely manner. Id. ¶¶ 86-91.  The Complaint also alleges that, despite notices of defects in the Parking Unit, the Individual Defendants failed and refused to "timely enforce the statutory and other warranties . . . failed and refused to timely enforce the repair and maintenance obligations of the Millennium Defendants" regarding the Parking Unit, and failed to "take appropriate action to timely perform repairs and maintenance to components of the Condominium that are part of the" Parking Unit. Id. ¶ 52.  The Complaint alleges that those failures were in bad faith, and were the result of self-interest on behalf of the Individual Defendants. Id.  The Complaint further alleges that those failures damaged the health and safety of MSRA unit owners, and damaged MSRA members' vehicles. Id. ¶¶ 92-96.  Therefore, the Complaint specifies a negligent act and characterizes the duty whose breach might have resulted

in negligence liability.  The Individual Defendants reliance on the opinion in *Simms* is misplaced.

In *Simms*, while the plaintiff alleged that the defendant owed a duty to the plaintiff, the plaintiff

failed to cite in its Complaint "any facts" supporting that the duty was breached.  *Simms*, 699 F.

Supp. 2d at 227.  Here, the Complaint asserts that the Individual Defendants owed a duty of care

to MSRA, identifies the basis for that duty, describes the circumstances in which the individual

plaintiffs allegedly did not fulfill their duty to MSRA, and alleges that the Individual

Defendants' failure to act was a proximate cause of harm that occurred to MSRA.  The claim of

negligence against the Individual Defendants is adequately plead and will not be dismissed.

## II.  BREACH OF CONTRACT

Count Eight of the Complaint alleges a claim of breach of contract against all defendants,

including the Individual Defendants.  The Complaint alleges that the governing documents of the

Owners Association created a valid and enforceable contract between MSRA and the Individual

Defendants, obligating the Individual Defendants to take "such action as may be necessary to

maintain and repair the Condominium" and to "enforce the responsibilities of the Millennium

Defendants to carry out their maintenance and repair obligations related" to the Parking Unit.

Compl. ¶¶ 110-111.  According to the Complaint, the Individual Defendants breached that

contractual obligation by failing to require the performance of necessary maintenance and repair

of the Condominium and the Parking Unit.  Id. ¶¶ 112.  The Individual Defendants contend that

Count Eight does not contain facts supporting the assertion that the Individual Defendants were

parties to the governing documents and therefore must be dismissed as to them.  Individual

Defs.' Mem. at 14-15.  The Court concludes otherwise.

The elements for a claim of breach of contract under D.C. law are: "'(1) a valid contract

between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty;

and (4) damages caused by breach.'" *Paulin v. George Wash. Univ. Sch. of Med.*, 878 F. Supp.

2d 241, 246 (D.D.C. 2012) (quoting *Mesumbe v. Howard Univ.*, 706 F. Supp. 2d 86, 94 (D.D.C.

2010) (internal quotation omitted)).   A valid and enforceable contract requires the: 1) express

intention of the parties to be bound; 2) agreement to all material terms, and 3) the assumption of

mutual obligations.   *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 579 (D.C. Cir. 2010); *Steven R.*

*Perles, P.C. v. Kagy,* 473 F.3d 1244, 1249 (D.C. Cir. 2007); *Simon v. Circle Assocs.*, 753 A.2d

1006, 1012 (D.C. 2000); *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C.

1995).   The party asserting the existence of a contract has the burden of proving all three

requirements.   *See New Econ. Capital, LLC v. New Mkts. Capital Grp.*, 881 A.2d 1087, 1094

(D.C. 2005).   In order to form a binding agreement, all "parties must have the distinct intention

to be bound; without such intent, there can be no assent and therefore no contract."   *RDP Techs.,*

*Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 141 (D.D.C. 2011) (quoting *Jack Baker, Inc. v. Office*

*Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995)).

     Here, MSRA has alleged a plausible claim of breach of contract against the individual

defendants.   While the Individual Defendants did not sign the governing documents, MSRA

alleges that they manifested their intent to be bound by the governing documents by accepting

their positions on the board.   In the District of Columbia, condominium instruments, such as

bylaws and the sales agreement, are contracts "between the unit owners and the condominium

association."   *1230-1250 Twenty-Third St. Condo. Unit Owners Ass'n v. Bolandz*, 978 A.2d

1188, 1191 (D.C. 2009) (citing *Lacy v. Sutton Place Condo. Ass'n*, 684 A.2d 390, 393 (D.C.

1996)); *see also Johnson v. Fairfax Village Condominium IV Unit Owners Ass'n*, 548 A.2d 87,

91 (D.C. 1988).

     The bylaws of the condominium association are a "'form of private law making,'"
     and individuals who choose this form of ownership, by agreement, forego some of

the traditional incidents of ownership.  [*Fairfax Village Condo. IV*, 548 A.2d at 91] (quoting *Ryan v. Baptiste,* 565 S.W.2d 196, 198 (Mo. Ct. App. 1978)). Except as otherwise stated in the condominium instruments or by law, the condominium association has the power to regulate the use of the common elements of the condominium.  D.C. Code § 45-1848 (a)(6) (1996); *see also Johnson v. Hobson,* 505 A.2d 1313, 1317 (D.C. 1986) (The condominium's governing body has broad authority to regulate affairs of the development and to adopt reasonable rules).

*Lacy v. Sutton Place Condo. Ass'n*, 684 A.2d 390, 393 (D.C. 1996).

In addition, MSRA cites the opinions in *Bolandz v. 1230-1250 Twenty-Third St. Condo. Unit Owners Ass'n*, 849 A.2d 1010, 1012 (D.C. 2004), and *Willens v. 2720 Wis. Ave. Coop. Ass'n*, 844 A.2d 1126, 1135-1136 (D.C. 2004), two cases where District of Colombia courts allowed breach of contract claims against Boards of Directors to be advanced.  Count Eight will not be dismissed as it applies to the Individual Defendants.

### III.   BREACH OF FIDUCIARY DUTY

Count Nine of the Complaint alleges that the Individual Defendants, as officers or members of the Board of Directors, owed fiduciary duties to the residential unit owners, whose interests are represented by the MSRA.  Compl. ¶¶ 114-118.  According to the Complaint, the defendants breached that duty by willfully, in bad faith, failing to maintain the Parking Unit in a safe and proper manner in accordance with the governing documents.  Id. ¶¶ 119.

The Individual Defendants argue that Count Nine's claim of breach of fiduciary should be dismissed.  The Individual defendants argue that Count Nine should be dismissed because their actions were protected by the business judgment rule.  The Individual Defendants also argue that the Complaint does not plausibly allege that the Individual Defendants owed MSRA fiduciary duties, or that if they did owe such duties that the Individual Defendants breached

them.  Individual Defs.' Mem. at at 10-11, 16-18.[9]  To make a legally cognizable claim of

breach of fiduciary duty under District of Columbia law, a plaintiff "must allege facts sufficient

to show (1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the

fiduciary relationship; and (3) injuries that were proximately caused by the breach of the

fiduciary duties."  *Armenian Genocide Museum & Memorial, Inc. v. Cafesjian Family Found.,*

*Inc.*, 607 F. Supp. 2d 185, 190-191 (D.D.C. 2009) (citing *Paul v. Judicial Watch, Inc.*, 543 F.

Supp. 2d 1, 5-6 (D.D.C. 2008).  "District of Columbia law has deliberately left the definition of

'fiduciary relationship' flexible, so that the relationship may change to fit new circumstances in

which a special relationship of trust may properly be implied."  *Teltschik v. Williams & Jensen,*

*PLLC*, 683 F. Supp. 2d 33, 46 (D.D.C. 2010); see also *Council on American-Islamic Relations*

*Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 341-42 (D.D.C. 2011) (finding that

plaintiff's factual allegations were sufficient to survive a motion to dismiss even assuming no

contractual relationship existed when the relationship "extended beyond the normal bounds of a

contractual relationship to form a special relationship founded upon trust and confidence")

(internal citation omitted)).  Whether a fiduciary relationship exists is a fact-intensive question,

and the fact-finder must consider "the nature of the relationship, the promises made, the type of

services or advice given and the legitimate expectations of the parties."  *Firestone v. Firestone*,

76 F.3d 1205, 1211 (D.C. Cir. 1996) (quoting *Church of Scientology Int'l v. Eli Lilly & Co.*, 848

F. Supp. 1018, 1028 (D.D.C. 1994)).

---

[9]   The Individual Defendants also argue that the claim for breach of fiduciary duty against
Mooney should be dismissed because he was not a member of the Board of Directors.  Individual
Defs.' Mem. at 16.  MSRA has not responded to this argument, and thus has conceded it.  *See*
*Maib v. FDIC*, 771 F. Supp. 2d 14, 20 (D.D.C. 2011) ("[t]he plaintiffs do not address this
argument in their opposition to the motion to dismiss, and therefore have waived any opposition
or have conceded the issue").

Here, the Complaint alleges a cognizable claim for breach of fiduciary duty against the Individual Defendants that falls outside of the purview of the business judgment rule.  "The District of Columbia courts have adopted the business judgment rule, which is a 'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *Armenian Assembly of Am. v. Cafesjian*, 772 F. Supp. 2d 20, 104 (D.D.C. 2011) (quoting *Behradrezaee v. Dashtara*, 910 A.2d 349, 361 (D.C. 2006) (internal quotation omitted)).  "Where the rule applies, the business judgment of the fiduciary will be respected by the courts absent an abuse of discretion."  *Cafesjian*, 772 F. Supp. 2d at 104.  The Complaint alleges that the Individual Defendants were directors of the Millennium Defendants or entities controlled by the Millennium Defendants, and that, acting in bad faith, they failed to force the Millennium Defendants to fix the Parking Unit out of self-interest –- namely, the protection of their employment with the Millennium Defendants.  "Where the [business judgment] rule applies, the business judgment of the fiduciary will be respected by the courts absent an abuse of discretion . . . [h]owever, the business judgment rule does not apply where the officers or directors 'lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available.'"  *Cafesjian*, 772 F. Supp. 2d at 104 (quoting *Behradrezaee*, 910 A.2d at 361).  Count Nine's claims against the Individual Defendants will not be dismissed.

### F.    MSRA'S MOTION TO DISMISS COUNTERCLAIMS

The Millennium Defendants filed a three count counterclaim alleging two counts of breach of contract and one count of unjust enrichment.  According to the counterclaim, in 2003

MSRA and the residential owners wanted to have more oversight and control over the portion of the Parking Unit that they used, and to that end entered into an oral operating agreement to manage and control the residential parking section of the Parking Unit.  Counterclaim ¶¶ 14-15. According to the Millennium Defendants, MSRA assumed the maintenance and repair obligations of the residential parking section of the Parking Unit, and because of that, since 2003, MSRA has been billed only a pro rata portion of the shared operating expenses of the Parking Unit.  The counterclaim alleges that in 2003, the residential parking section of the Parking Unit was physically separated from the rest of the Parking Unit by a chain link fence and a company was hired by MSRA to manage the residential section of the Parking Unit, consistent with the alleged oral operating agreement.  Id. ¶¶ 14-16.  Count One of the counterclaim alleges that the MSRA breached the operating agreement by failing to repair the residential portion of the Parking Unit.  Id. ¶¶ 29-37.  Count Two of the counterclaim alleges that if the operating agreement is deemed unenforceable, MSRA and the unit owners were all in default of the original parking lease because they had not paid the full amount, more than three million dollars according to the counterclaim, of the operating expenses due under the terms of that lease.  Id. ¶¶ 39-42.  Count Three alleges that MSRA and the residential unit owners were unjustly enriched by failing to pay their true share of the operating expenses of the Parking Unit.  Id. ¶¶ 44-46.

## I.  DUTY

MSRA has moved under Rule 12(b)(6) to dismiss the counterclaim in its entirety.  MSRA first argues that the counterclaim fails to allege a duty on behalf of MSRA because the governing documents imposed a duty on the Millennium Defendants to operate and maintain the Parking Unit that could not be modified or extinguished by an oral agreement.  Pl.'s Mem. at 4-7.  As

mentioned above, the elements for a claim of breach of contract under D.C. law are: "'(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" *Paulin*, 878 F. Supp. 2d at 246 (quoting *Mesumbe*, 706 F. Supp. 2d at 94 (internal quotation omitted)). A valid and enforceable contract requires the: 1) express intention of the parties to be bound; 2) agreement to all material terms, and 3) the assumption of mutual obligations. *Gaujacq.*, 601 F.3d at 579. The party asserting the existence of a contract has the burden of proving both requirements. *New Econ. Capital, LLC*, 881 A.2d at 1094. Under the law of the District of Columbia, parties may orally modify a written contract through mutual consent, provided that 'the modification possess[es] the same elements of consideration as necessary for normal contract formation.'" *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 573 F. Supp. 2d 152, 173 (D.D.C. 2008) (quoting *Hershon v. Hellman Co.*, 565 A.2d 282, 283 (D.C. 1989)).

Here, the counterclaim does allege that the oral agreement created a duty on behalf of MSRA that is not completely foreclosed by, or inconsistent with, the governing documents. The counterclaim is based not on a modification of the original obligation, but on a separate agreement. MSRA does not dispute that the Millennium Defendants could contract with a separate entity to maintain the Parking Unit, and the Millennium Defendants are essentially arguing that they contracted -- through the oral agreement -- with MSRA to fulfill that obligation. The counterclaims sufficiently allege a duty.

## II. STATUTE OF LIMITATIONS

MSRA also argues that any claims alleged in the counterclaim are limited by the statute of limitations to those that occurred within the past three years. MSRA's Mem. at 12. In the District of Columbia, claims for breach of contract are subject to a three-year statute of

limitations.  D.C. Code § 12-301.  The limitations period begins to run at the time of the

defendant's breach.  *Murray v. Wells Fargo Home Mortg.,* 953 A.2d 308, 319-20 (D.C. 2008)

(citation omitted).  The limitations period for a claim for breach of contract may be tolled under

the "discovery rule" so that the limitations period does not begin to run until a plaintiff has actual

or inquiry notice of its cause of action.  *Harris v. Ladner*, 828 A.2d 203, 205-06 (D.C. 2003).

"In addition, where the defendant has done anything . . . to lull the plaintiff into inaction, thereby

affirmatively inducing the plaintiff not to file a timely lawsuit, the defendant may be estopped

from asserting the bar of the statute of limitations."  *Beard v. Edmondson & Gallagher*, 790 A.2d

541, 546 (D.C. 2002) (internal citation omitted).  Here, MSRA does not allege the statute of

limitations as a reason to dismiss the counterclaim.  Instead, it argues that it is a reason to limit

the damages in the event that the counterclaim is successful.  Furthermore, Millennium

Defendants raise a factual dispute by alleging that MSRA's course of conduct lulled them into

not timely raising their claims.  The factual dispute raised here will not be resolved at this time,

and the counterclaim will not be dismissed as barred by the statute of limitations.

### III.  UNJUST ENRICHMENT

MSRA argues that the claim for unjust enrichment is prohibited because there is an

express contractual relationship between the parties.  "'Unjust enrichment occurs when a person

retains a benefit (usually money) which in justice and equity belongs to another.'" *Movahedi v.*

*U.S. Bank, N.A.*, 853 F. Supp. 2d 19, 29 (D.D.C. 2012) (quoting *4934, Inc. v. D.C. Dep't of*

*Emp't Servs.*, 605 A.2d 50, 55 (D.C. 1992)).  Under District of Columbia law, a "plaintiff states a

claim for unjust enrichment when: (1) the plaintiff confers a benefit upon the defendant; (2) the

defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the

benefit is unjust."  *Sabre Int'l Sec. v. Torres Advanced Enter. Solutions*, 820 F. Supp. 2d 62, 76

(D.D.C. 2011) (citing *News World Communications v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)).

Here, the counterclaim does not allege a plausible claim of  unjust enrichment.  "Because both promissory estoppel and unjust enrichment presuppose that an express, enforceable contract is absent, District of Columbia courts generally prohibit litigants from asserting these claims when there is an express contract that governs the parties' conduct."  *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C. 2010).  Here, the parties have alleged at least two agreements - - the oral agreement and the condominium documents - - that governed their relationship.  There is no space left for the counterclaimants assertion of unjust enrichment, and that claim will be dismissed.

<u>CONCLUSION</u>

MSRA has not shown that Millennium Trust and MSCA are entities that can sue or be sued.  MSRA's Complaint states plausible causes of action for negligence, breach of contract and breach of fiduciary duty against the Individual Defendants and for strict liability against the Millennium Defendants.  The counterclaim alleges a plausible claim of breach of contract, but does not allege a plausible claim of unjust enrichment.  Therefore, it is hereby ORDERED AS FOLLOWS:

1) The motions [8, 14] to dismiss the Complaint against Millennium Washington Commercial Trust and Millennium Square Commercial Association are hereby GRANTED.

2) The Individual Defendants' motion [13] to dismiss is hereby GRANTED in part and DENIED in part.  Count Nine is dismissed as to defendant Craig Mooney.  The remainder of the motion is denied.

3) The Millennium Defendants' joint motion [9] to dismiss counts 5 and 6 is hereby

DENIED.

4) The plaintiff's motion [23] to dismiss the counterclaim is hereby GRANTED in part

and DENIED in part.

**SO ORDERED.**

      July 10, 2013

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE